# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============
### NO. 03-00-00405-CR
===============

**Felipe Monroy-Malagon, Appellant**

**v.**

**The State of Texas, Appellee**

=========================================================================
### FROM THE DISTRICT COURT OF LLANO COUNTY, 33RD JUDICIAL DISTRICT
### NO. CR4923, HONORABLE CHARLES J. HEARN, JUDGE PRESIDING
=========================================================================

Appellant Felipe Monroy-Malagon was indicted on five counts of aggravated assault on a public servant with a deadly weapon. *See* Tex. Penal Code § 22.02 (West 1994). The jury acquitted appellant on four counts and convicted him on the fifth count of aggravated assault upon Melvin Lawson, a public servant, with a deadly weapon, to wit: a club. The jury assessed punishment at five years' probation.

### Points of Error

Appellant advances four points of error. First, appellant contends that the trial court erred in denying his re-urged motion to suppress evidence immediately prior to the jury's deliberations. Second, appellant argues that the trial court erred in refusing his special requested jury instruction "regarding article 14.05 and article 38.23 of the Texas Code of Criminal Procedure." Third, appellant urges that the trial court erred in refusing his special requested jury

instruction "regarding article [sic] 9.31(c) of the Texas Penal Code on self-defense." Fourth, appellant asserts that the trial court erred in instructing the jury that the individuals (complainants in the various counts of the indictment) participating in his arrest were peace officers. We will affirm the conviction.

**Background**

Appellant does not challenge the sufficiency of the evidence to support the conviction. The facts, however, will be discussed to place the issues in proper perspective. It appears a boundary dispute arose between appellant, owner of Tract 107, Rio Vista Subdivision, Unit 3 in Llano County, and Michael Larson, owner of Tract 108. On February 2, 1999, Larson secured a default judgment (cause no. 11,864) in the 33rd District Court establishing the northern boundary of Tract 108, an injunction enjoining appellant and his wife from interfering with the construction of a fence on the northern boundary of Tract 108, and awarding Larson $10,000 in actual damages and $10,000 in exemplary damages. The judgment reflects that appellant filed no answer.[1]

All the testimonial evidence about the incident in question came from the State's four witnesses. Appellant did not testify or offer any evidence. Lieutenant Jay Bauman, an investigator with the Llano County Sheriff's Office, testified that on March 17, 1999, he received a visit from Michael Larson, who told him that appellant had committed an assault upon Larson that day as Larson was attempting to construct a fence along the northern boundary line of Tract

_____

[1] A hearing on a pretrial motion in the instant case reflects that appellant was represented by an attorney in the civil case, who later withdrew.

2

Investigator Bauman responded by going to the Larson property and having Larson return to the fence building site and continue work while Bauman hid in some bushes with a video camera. Larson drove one post into the ground and moved to another position when several females came out of appellant's house and began yelling at Larson in Spanish. Bauman then observed appellant approaching Larson. Bauman saw appellant, who appeared angry, raise a machete over his head as he approached Larson, yelling at Larson in Spanish. Larson began to retreat. Bauman was dressed in a green-striped, short-sleeved shirt and blue jeans. His badge was displayed on his shirt pocket. He pulled his "on duty" side arm and came out of the bushes yelling "Policia, Policia" and "Alto" (stop) in Spanish, of which he spoke little. Bauman pursued appellant as appellant left the scene. In a "dry wash," several females attempted to block Bauman's way, while appellant stood behind the women swinging his machete in a threatening manner. Larson yelled that someone had a gun. Bauman saw Jorge Monroy, appellant's son, pointing a black handgun at him from about fifty feet away. Things came to a standstill until Bauman picked up the video camera and began filming the scene in front of him. Appellant moved behind a tree and Jorge Monroy dropped his hand holding the gun and turned away. Bauman then ran over the hill to his parked patrol vehicle and used his radio to summon assistance. He moved his vehicle to maintain visual contact with appellant's residence.

As a City of Llano officer arrived, a vehicle with two females attempted to leave appellant's property. The car was stopped and the women were arrested. Later, Bauman took a shotgun from his vehicle and with other officers approached the house and took Jorge Monroy, who was outside the house, into custody. Jorge was unarmed. Bauman saw appellant inside the

house at a window shaking a machete at him. Bauman took a hoe and tried unsuccessfully to break in the front door. He then retrieved a crowbar and hammer from his patrol vehicle and forced entry through the side door of appellant's residence. Bauman contended that he was in hot pursuit of a suspect after the commission of felonies in his presence.

With his weapon drawn, Bauman entered the house. Inside, he found appellant's wife and two small children. Appellant stood about twenty feet away from Bauman in a baseball batting stance with a cedar club. As the entering officers moved forward, Mrs. Monroy tried to block their path. The officers side-stepped her and Bauman tackled appellant. Bauman reported that as he did so, appellant attempted to swing the club at him, but hit Deputy Melvin Lawson on the arm causing a laceration.

On cross-examination, Bauman acknowledged that upon his first contact with Michael Larson, he did not have Larson file a complaint nor did he seek an arrest warrant. Bauman returned with Larson to the scene to set up a surveillance and gather more evidence, with the expectation that there might be a further disturbance.

Bauman admitted that he was a larger man than appellant, and that the other officers were Bauman's size or larger; that when appellant was tackled, all four officers eventually got on top of appellant; and that appellant suffered a broken arm. The machete was found on the dining room table and a handgun was discovered under a mattress in Jorge Monroy's bedroom.

Deputy Sheriff Ted Christopher responded to Bauman's call for assistance. He entered the house along with Bauman and corroborated much of Bauman's testimony. Likewise,

4

Llano Police Officer James Schilling responded to Bauman's request for assistance and entered the house with Bauman. His testimony paralleled that of Bauman.

Deputy Melvin Lawson, the complainant in the fifth count of the indictment, testified that as he entered appellant's house with Bauman, appellant stepped forward and struck him on the arm with a club as appellant was being tackled by Bauman. Lawson described his injury as a laceration which "was real bloody and bruised and swollen." Lawson displayed his arm to the jury.

On cross-examination, Lawson acknowledged that later he went to the hospital where the doctor diagnosed the injury as an abrasion and advised Lawson to take Tylenol if the injury caused problems. Dr. Sky Forrister of the Llano Hoerster Clinic saw Lawson on March 17, 1999, after the incident in question. The x-rays revealed no broken bones. Dr. Forrister found an abrasion and not a laceration. A dressing was placed on Lawson's arm and Tylenol was recommended for pain.

**A Reurged Motion to Suppress**

In his first point of error, appellant contends that the trial court erred in denying his "motion to suppress evidence obtained as a result of the officers' illegal, warrantless entry and search of appellant's residence as re-urged immediately prior to the jury's deliberations."

A motion to suppress evidence is strictly a pretrial motion. Tex. Code Crim. Proc. Ann. art. 28.01, § 1(6) (West 1989). It was not recognized in Texas until it was provided for in the 1965 Code of Criminal Procedure. Prior to the effective date of the code (January 1, 1966),

5

a defendant in a criminal case was relegated to an evidentiary trial objection. The hearing of a pretrial motion to suppress evidence is discretionary with the trial court. *Calloway v. State*, 743 S.W.2d 645, 649 (Tex. Crim. App. 1988). If no hearing is held, the defendant must raise the evidentiary issue by a trial objection. *Writt v. State*, 541 S.W.2d 424, 425 (Tex. Crim. App. 1976). While strictly a pretrial motion, the term "motion to suppress" is sometimes, but improperly, used to mean trial objection.

In the instant case, appellant filed a pretrial motion to suppress evidence. We are unable to tell whether the trial court ruled on the motion. After the motions for instructed verdicts on the various counts were overruled at the guilt/innocence stage of the trial, appellant "reurged" his motion "to suppress all of the evidence and testimony that occurred after the entry into the house" by peace officers on the basis of violations of articles 14.05 and 38.23 of the Code of Criminal Procedure. Appellant sought to remove from the jury's consideration any evidence of any offenses committed by appellant after the officers entered the house. This trial objection was overruled.

In his brief, appellant complains only of this ruling. We are cited solely to trial testimony in support of his contention that the illegal acts of the officers in entering appellant's house called for the withdrawal from the jury of evidence of appellant's criminal conduct, if any. The legality of the officers' entry into the house and the arrest may be irrelevant in certain circumstances.

In *Gonzalez v. State*, 574 S.W.2d 135, 137 (Tex. Crim. App. 1978), the court, speaking through Judge Dally, held that a conviction for aggravated assault of a peace officer does

6

not depend on whether the arrest made by the officer was legal. *Gonzalez* noted that with the enactment of section 38.03 of the Penal Code, a person may not lawfully resist an unlawful arrest,[2] overruling previous case law. *See also Montoya v. State*, 744 S.W.2d 15, 29 (Tex. Crim. App. 1987) (police officer is still acting within lawful discharge of his duties when he makes unlawful arrest so long as he is acting within his capacity as a peace officer). Thus, resisting arrest is unlawful in Texas and it is no defense to prosecution that the arrest or search was unlawful. *State v. Mayorga*, 901 S.W.2d 943, 946 (Tex. Crim. App. 1995); (citing *Barnett v. State*, 615 S.W.2d 220, 223 (Tex. Crim. App. 1981), and *Ford v. State*, 538 S.W.2d 633, 635 (Tex. Crim. App. 1976)).

In *Salazar v. State*, 643 S.W.2d 953, 956 (Tex. Crim. App. 1983), though confronting a different issue, the court noted the *Gonzalez* decision and pointed out that "a conviction under 22.02(a)(2) [aggravated assault of a peace officer] does not depend on whether the arrest was legal, or on the defendant's belief about its legality." *Id.*

In *Cooper v. State*, 956 S.W.2d 95 (Tex. App.—Tyler 1997, pet. ref'd), the court wrote:

---

[2] Section 38.03 provides in pertinent part:

   (a)  A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest or search of the actor or another by using force against the peace officer or another.

   (b)  It is no defense to prosecution under this section that the arrest or search was unlawful.

Tex. Penal Code Ann. § 38.03(a), (b) (West 1994).

7

Likewise, in a case of aggravated assault on a peace officer, as in the instant case, the evidence of aggravated assault on the peace officer does not exist at the time a lawful or unlawful arrest is attempted. The evidence relating to the crime of aggravated assault in this case came into existence only after Officer Lust attempted to detain and question Appellant. In authorities such as *Gonzalez* and *Barnett*, the Court of Criminal Appeals relied on the close connection between the crimes of resisting arrest and aggravated assault on a peace officer to dispose of the question of the lawfulness of the arrest, and the connection is no less persuasive here. The reasoning expressed in *Mayorga* for the admission of evidence is even more applicable to a case such as the instant case, where the resistance of arrest went so far as to constitute aggravated assault. We hold that the alleged illegality of the arrest was irrelevant to the crime of aggravated assault on a peace officer in this case. The evidence of the aggravated assault was not "obtained in violation of the law." The trial court, therefore, did not err in refusing to suppress the evidence concerning the aggravated assault.

*Id.* at 98; *see also Mayorga*, 901 S.W.2d at 946.

For the foregoing reasons, we find no merit in appellant's contention that the trial court erred in failing to grant his trial objection that would have removed from the jury's consideration all evidence of the charged offense. The first point of error is overruled.

**Requested Jury Instructions**

In point of error two, appellant contends that the trial court erred in denying his "special requested instruction" regarding articles 14.05 and 38.23 of the Texas Code of Criminal Procedure.

Our attention is directed simply to "See Supplement to Defendant's Special Requested Instructions." This is not in compliance with our briefing rules. Tex. R. App. P. 38.1(h). Our search reveals documents so entitled in the clerk's record. Further search shows that after the jury argument at the guilt/innocence stage of the trial, appellant reduced the special

8

requested instructions to writing and filed them with the clerk. These requests were overruled. Such special requested charges are required to be presented in writing to the trial court or dictated to the court reporter *before the reading of the court's charge to the jury*. *See* Tex. Code Crim. Proc. Ann. art. 36.15 (West Supp. 2001). The same is true of any objections to the jury instructions. *See id.* art. 36.14. Special requested instructions presented after the charge has been read to the jury and the jury has retired to deliberate are not timely and may not be considered on appeal. *See Rojas v. State*, 662 S.W.2d 466, 469 (Tex. App.—Corpus Christi 1983, pet. ref'd).

If it be appellant's contention that these requested instructions should be considered on appeal regardless of their untimely presentation, the matter has not been briefed. *See* Tex. R. App. P. 38.1(h). Moreover, in this multifarious point of error, appellant does not brief the requested instruction concerning article 14.05. Still further, even if the requested instruction on article 38.23 had been timely presented, the trial court would not have erred in denying the same under the circumstances presented and discussed in the first point of error and in light of *Mayorga*, 901 S.W.2d at 946. If evidence is not "obtained" in violation of the law, then its admission into evidence is not in contravention of article 38.23. *Johnson v. State*, 871 S.W.2d 744, 751 (Tex. Crim. App. 1994). The second point of error is overruled.

### Self-defense

In appellant's third point of error, he claims that the trial court erred in denying his special requested instruction on self-defense. *See* Tex. Penal Code Ann. § 9.31(c) (West Supp. 2001). Because appellant did not admit the offense and then offer justification for it, the issue of

9

self-defense was not raised, and the trial court did not err in denying the instruction requested. *Anderson v. State*, 11 S.W.3d 369, 372 (Tex. App.–Houston [1st Dist.] 2000, pet. ref'd) (citing *Young v. State*, 991 S.W.2d 835, 839 (Tex. Crim. App. 1999)).

"The defendant has the burden of producing (going forward with) sufficient evidence to raise the issue of self-defense." *Shelvin v. State*, 884 S.W.2d 874, 878 (Tex. App.–Austin 1994, pet. ref'd). The State, however, is not required to affirmatively produce evidence to refute the self-defense, but only prove its case beyond a reasonable doubt. *Id.* Generally, when evidence from any source raises a defensive issue, and the defendant properly requests a jury instruction on that issue, the trial court must submit the issue. *See Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993). However, under recent case law, to raise the defensive issue of self-defense, a defendant must admit the committed offense and then offer self-defense as justification. *Anderson*, 11 S.W.3d at 372; *Young*, 991 S.W.2d at 839 (finding defendant was not entitled to instruction on the defense of necessity because he argued he did not commit offense).

This is so because self-defense is inconsistent with a denial of criminal conduct. *Sanders v. State*, 707 S.W.2d 78, 81 (Tex. Crim. App. 1986); *MacDonald v. State*, 761 S.W.2d 56, 60 (Tex. App.–Houston [14th Dist.] 1988, pet. ref'd). Self-defense is found in Chapter Nine of the Texas Penal Code entitled "Justification Excluding Criminal Responsibility" which also includes "necessity" and "public duty." These defenses have traditionally been recognized as justification for conduct that would otherwise be criminal.

10

In the instant case, appellant entered a plea of not guilty. He did not testify nor did he offer evidence that he committed the charged offense and acted in self-defense as justification. We did not find other evidence in the record to raise the issue. The trial court did not err in refusing the special requested charge. The third point of error is overruled.

**Jury Instruction on Peace Officer**

Lastly, appellant contends that the trial court erred in instructing the jury that certain named individuals, including the complainant, were peace officers.

At the guilt/innocence stage of the trial, the trial court instructed the jury in its charge, *inter alia*, that:

> "Peace officer" means a person elected, employed, or appointed as a peace officer under art. 212 of the Code of Criminal Procedure, sec. 51.212 or 51.214 of the Education Code, or other law.

> You are instructed that Jay Bauman, Ted Christopher, James Schilling, and Melvin Lawson are Peace Officers.

The first sentence of the instruction is the statutory definition of a "peace officer." Tex. Penal Code Ann. § 1.07(a)(36) (West 1994). Appellant timely objected, however, to the second sentence of the jury instruction that the named individuals, including the complainant in count five of the indictment, were peace officers. Appellant objected that the instruction commented on the weight of the evidence and on an element of the offense, lessened the State's burden of proof, and was a violation of due process and due course of law. The objection was overruled.

11

Count five of the indictment under which appellant was convicted alleged that on or about March 17, 1999, appellant:

**PARAGRAPH A**

did then and there intentionally and knowingly threaten Melvin Lawson with imminent bodily injury and did then and there use and exhibit a deadly weapon, to wit: a club, during the commission of said assault, and the said Melvin Lawson was then and there a public servant to wit: a Llano county Sheriff's Officer in the lawful discharge of an official duty, to wit: arresting Felipe Monroy-Malagon, and the said Defendant had been informed and knew Melvin Lawson was a public servant,

**PARAGRAPH B**

did then and there intentionally, knowingly and recklessly cause bodily injury to Melvin Lawson by striking the arm of Melvin Lawson with a club, and the said Defendant did then and there use and exhibit a deadly weapon, to wit: a club, during the commission of said assault, and the said Melvin Lawson was then and there a public servant in the lawful discharge of an official duty, to wit: arresting Felipe Monroy-Malagon, and the said Defendant had been informed and knew Melvin Lawson was a public servant,

And it is further presented that Felipe Monroy-Malagon used and exhibited a deadly weapon, to wit: a club, during the commission of and immediate flight from said offense.

"Public servant" is clearly an essential element of the offense charged under the statute. *See* Tex. Penal Code Ann. § 22.02(a)(1), (2), (b)(2) (West 1994). The element is clearly reflected in both paragraphs of count five. In its charge to the jury, the trial court submitted both paragraphs of count five to the jury. While the jury charge did not set out the statutory definition of "public servant," *see* Tex. Penal Code Ann. § 1.07(a)(41) (West 1994), the charge did give the statutory definition of "peace officer," and designated the complainants, including Melvin

12

Lawson, as peace officers. Such instruction clearly placed Lawson within the meaning of the statutory definition of "public servants," an essential element of the offenses charged in count five. The jury returned its verdict:

> We, the Jury, find the defendant, Felipe Monroy-Malagon, guilty of aggravated assault on a public servant, as charged in the indictment.
>
> Hazel Beard
> Foreman of the Jury[3]

A trial court may not comment on the weight of the evidence in the jury charge or instructions. Tex. Code Crim. Proc. Ann. art. 36.14 (West Supp. 2001); *Smith v. State*, 959 S.W.2d 1, 27 (Tex. App.–Waco 1997, pet. ref'd). A trial court should never give an instruction which constitutes a comment on the elements of the offense, or assumes a disputed fact. *Grady v. State*, 634 S.W.2d 316, 317 (Tex. Crim. App. 1982); *Molinar v. State*, 910 S.W.2d 572, 584 (Tex. App.–El Paso 1995, no pet.); *Collins v. State*, 800 S.W.2d 267, 269 (Tex. App.–Houston [14th Dist.] 1990, no pet.). Such action is impermissible. *Davis v. State*, 955 S.W.2d 340, 351 (Tex. App.–Fort Worth 1997, pet ref'd); *cf. Atkinson v. State*, 923 S.W.2d 21, 24-5 (Tex. Crim. App. 1996). The trial court erred in instructing the jury that Melvin Lawson was a peace officer, which was tantamount to telling the jury Lawson was a public servant, an essential element of the offense charged.

---

[3] If alternative theories are submitted to the jury and a single, general verdict form is provided, a verdict of guilty will be upheld against an evidentiary sufficiency attack if there is sufficient evidence to support the verdict under any one of the theories submitted. *Brooks v. State*, 990 S.W.2d 278, 283 (Tex. Crim. App. 1999); *Kitchens v. State*, 823 S.W.2d 256, 257 (Tex. Crim. App. 1991).

**Harmless Error**

In reviewing jury charge error, we apply the usual *Almanza* standard which depends upon whether appellant preserved the error. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). Where appellant preserved error by timely objection, as in the instant case, we reverse the conviction if we find any actual harm, regardless of the degree. *Abdnor v. State*, 871 S.W.2d 726, 739-40 (Tex. Crim. App. 1994). We assess harm from preserved error in light of the entire charge, considering (1) the charge itself; (2) the state of the evidence, including contested issues and the weight of probative evidence; (3) arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171.

An examination of the jury charge shows that the trial court required the jury to find beyond a reasonable doubt that each element of the offenses alleged in count five was proven before the jury could convict. While the trial court did not submit the statutory definition of "public servant," as noted earlier, there was no objection to the omission. In exploring the state of the evidence, we find no contested issue as to whether Lawson was a peace officer. Lawson identified himself as a deputy sheriff of Llano County with several years of experience. Other officer-witnesses referred to him as an officer or a deputy in their testimony. No one questioned his status. Appellant did not testify or offer evidence. The sufficiency of the evidence is not challenged. The fact that Lawson was a peace officer was not controverted. Considering the other relevant portions of the record, we do not find any actual harm caused by the trial court's jury charge error. Even when the matter is uncontroverted, however, the trial court should

14

proceed with extreme caution in charging in such matters. *See Tew v. State*, 551 S.W.2d 375, 378 (Tex. Crim. App. 1977). Finding that the error here was harmless under *Almanza*, the fourth point of error is overruled.

The judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Chief Justice Aboussie, Justices Patterson and Onion[*]

Affirmed

Filed:   March 29, 2001

Do Not Publish

*     Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).