

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

NO. PD-0893-14
NO. PD-0894-14

**JOEY DARRELL FAUST, Appellant**

**v.**

**THE STATE OF TEXAS**

**RAMON MARROQUIN, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON STATE'S PETITIONS FOR DISCRETIONARY REVIEW
## FROM THE SECOND COURT OF APPEALS
## TARRANT COUNTY

JOHNSON, J., filed a concurring opinion.

### C O N C U R R I N G   O P I N I O N

I am mindful of the extremely sensitive nature of constitutional issues that arise out of encounters between police officers who are acting under the color of their authority and private citizens. The Court's decision today—that Section 38.15 was not unconstitutionally applied to appellants—is based upon our finding that the police officers' exercise of authority was lawful. But,

what if the police had set up a skirmish line that was not lawful? Could appellants have rightfully disregarded it?

Section 38.15 does not contain language that expressly provides for a peace officer's reasonable interpretation of his authority to perform his duties without interference. However, the legislature has addressed a similar issue by placing subsection (b) in Texas Penal Code section 38.03, which prohibits a person from resisting an arrest.[1] In *Gonzalez v. State*, 574 S.W.2d 135, 137 (Tex. Crim. App. 1978), we held that "[r]egardless of whether [Gonzalez's] arrest was lawful or unlawful, the deputy constable was in the lawful discharge of his duty when he attempted to arrest [Gonzalez]." In *State v. Mayorga*, 901 S.W.2d 943, 945 (Tex. Crim. App. 1995) (citing *Barnett v. State*, 615 S.W.2d 220, 223 (Tex. Crim. App. 1981)) (quoting *Ford v. State*, 538 S.W.2d 633, 635 (Tex. Crim. App. 1976)), we stated, "Several states have eliminated either by statute or by judicial decision the common law right to resist an unlawful arrest. This reflects a growing realization that the use of self-help to prevent an unlawful arrest presents too great a threat to the safety of individuals and society to be sanctioned. The line between an illegal and legal arrest is too fine to be determined in a street confrontation; it is a question to be decided by the courts."

These policy reasons seem to support a similar limitation on a citizen's right to interfere with the reasonable exercise of police authority, regardless of the constitutionality of the purpose behind such interference. The issue of whether officers are exercising their lawful authority in enforcing a skirmish-line order should not be made by those intending to disobey that order. The societal interest in the orderly settlement of disputes between citizens and their government should arguably outweigh any individual interest in resisting a questionable police directive, particularly one as

---

[1] "It is no defense to prosecution [for resisting arrest] . . . that the arrest or search was unlawful."

nonintrusive as a skirmish line. And, under current statutory law, we should not craft such an exception when none is provided.

The remedy for citizens who believe that they have been arrested in violation of their constitutional rights lies in Title 42, section 1983, of the United States Code.[2] That statute provides, in pertinent part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, . . . subjects . . . any . . . person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . for redress. . . ." To obtain relief pursuant to Section 1983, a plaintiff must show that he was deprived of a right under the Constitution or laws of the United States by a person acting under color of state law. *Resident Council of Allen Parkway Vill. v. U.S. Dep't of Housing & Urban Dev.*, 980 F.2d 1043, 1050 (5th Cir. 1993). The threshold question is whether the alleged facts show that the officer's conduct violated a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). If a plaintiff shows that he had a clearly established right that was violated, the next inquiry is whether a reasonable official could have believed his conduct was lawful. *See, e.g.*, *Freeman v. Gore*, 483 F.3d 404, 415 (5th Cir. 2007) (a reasonable officer would have known that he could not lawfully search the plaintiff's home); *see also Pritchard v. Downie*, 326 F.2d 323, 325 (8th Cir. 1964) (dismissing complaint against police; marchers broke through police line, thus justifying a finding that conduct of some of the marchers was riotous and that, therefore, police could arrest them without violating their First Amendment rights). Only if the officer could not reasonably determine that his actions were lawful is there injury of a constitutional dimension.

The First Amendment protects speech and expressive conduct. Crossing a street is neither

---

[2] 42 U.S.C. § 1983: "Civil Action For Deprivation of Rights."

speech nor, in this case, expressive conduct. Thus it is not subject to First Amendment protections. In this case, appellants were never prevented from crossing a street in order to go to the east, west, or north, and crossing a street in order to go south and harass parade marchers and watchers is not expressive conduct. Appellants' right to express their views by speech and expressive conduct was at all times unfettered, even when their expression of their views was laden with foul, abusive, and offensive language. Only where they could express those views was limited, and only temporarily. They were arrested, not for speech, but for interfering with public duties by failing to obey the lawful order of a police officer and for pushing one or more officers, acts without First Amendment ramifications.

I also note that nowhere in appellants' complaints is any mention of the First Amendment rights of the parade marchers and attendees. The old adage that says that my right to swing my fists ends at your nose applies here. The persons at whom appellants directed their invective may be shouted down by appellants, but they may not be physically abused by appellants under a claim of First Amendment rights. Given a known pattern of behavior by appellants and other members of their group, the police properly determined that, to prevent physical abuse of the marchers, the two groups must be kept a reasonable distance apart for a reasonable period of time. This principle has repeatedly been demonstrated and approved over decades as police formed skirmish lines to separate Klan members from civil-rights marchers in Montgomery, Alabama, Neo-Nazis from gatherings of Jewish holocaust survivors in Skokie, Illinois, and members of the Westboro Baptist Church from funeral services for fallen American warriors in a number of cities. I join the opinion of the Court.

Filed: December 9, 2015
Publish